Larry PULLEN, Plaintiff/Appellee,

v.

TEXTRON, INC., d/b/a Homelite, Defendant/Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 28, 1992.

Application for permission to Appeal Denied by Supreme Court Nov. 30, 1992.

Robert L. Jones, James W. Couch, Trabue, Sturdivant & DeWitt, Columbia, for plaintiff/appellee.

Barbara Moss, Gullett, Sanford, Robinson & Martin, Nashville, Joe T. Childress, Hermitage, for defendant/appellant.

## OPINION

LEWIS, Judge.

This is an appeal by defendant, Textron, Inc., d/b/a Homelite (Textron), from the trial court's judgment entered on the jury's verdict finding that plaintiff, Larry Pullen, was entitled to recover compensatory damages of $45,000.00 and punitive damages of $150,000.00 on his claim of malicious prosecution.

## THE FACTS

In 1982, Mr. Pullen started his own business selling chain saws and other outdoor power equipment. The business was later incorporated under the name Pullen Bros., Inc., d/b/a "Chain Saw Sales of Columbia." Defendant Textron, Inc. is a manufacturer of chain saws and other power equipment. In May 1983, Textron entered into a dealership agreement with Mr. Pullen. From that time until December 1987, Mr. Pullen operated the dealership, selling Textron equipment and servicing that equipment as its authorized agent. During that time there were numerous transactions between the parties in the form of sales, payments, and reimbursements for work performed on equipment under warranty.

Mr. Pullen tendered two checks in the amounts of $156.21 and $584.31 to defendant Textron that were returned for insufficient funds that are the subject of this lawsuit.

There was a dispute between the parties as to whether Mr. Pullen owed defendant Textron after the checks had been returned NSF. Mr. Pullen claimed that his customer statements from defendant Textron did not accurately reflect all of the credits owed and the balance due on his account.

In May 1988, Mr. Pullen filed a Chapter 7 bankruptcy petition for discharge of personal debts and corporate debts. He did not list Textron (d/b/a Homelite) as a creditor in that bankruptcy proceeding because the December 1987 customer statement showed "account closed; balance, zero." The bankruptcy court granted Mr. Pullen a discharge of all debts on 10 January 1989.

In January 1989, Terrell Strickland, Textron's District Manager, took the NSF checks to the courthouse in Columbia, Tennessee, and inquired, "Where do I get started at collecting these checks." After discussing the matter with General Sessions Judge George Lovell, Strickland signed a General Sessions criminal warrant and plaintiff was arrested on 16 January 1989.

After dismissal of the criminal proceedings, Strickland filed a civil suit in General Sessions Court on behalf of Textron and against Mr. Pullen for $740.52, the total amount of the two checks, and on 15 August 1989 the trial of the civil case ended with a judgment for Mr. Pullen.

■ On 1 August 1990, Mr. Pullen filed suit against Textron and Terrell Strickland[1] seeking damages for malicious prosecution. At the close of all the proof, the court directed a verdict in favor of Textron on Mr. Pullen's claim as to the prior civil proceeding. Defendant Textron's motion for a directed verdict as to the criminal proceeding was overruled and the jury returned a verdict of $45,000.00 compensatory damages and $150,000.00 in punitive damages for Mr. Pullen.

Following the trial of this case and while this appeal was pending, the Tennessee Supreme Court rendered an opinion in *Hodges v. S.C. Toof and Co.*, 833 S.W.2d 896 (Tenn. 1992), which changed the law in Tennessee regarding the criteria for an award of punitive damages and the trial procedure in cases where punitive damages are claimed. The Court announced that these changes in the law were applicable to all cases pending in the trial or appellate courts of Tennessee. *Toof*, 833 S.W.2d at 902.

The Court, in *Toof*, held that "[i]n Tennessee, therefore, a court may henceforth award punitive damages only if it finds the defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id.* 833 S.W.2d at 901. This holding effectively limits the availability of punitive damages to plaintiffs in Tennessee

■ In addition, under the new procedure announced in *Toof*, trial courts are required to bifurcate the trial upon the motion of the defendant. During the first stage, liability for, and the amount of, compensatory damages, and liability for punitive damages are determined by the finder of fact without the introduction of proof of the defendant's financial condition. If the finder of fact finds liability for punitive damages in the first stage, during the second stage of the trial the finder of fact determines the amount of punitive damages based in part upon the defendant's financial condition. *Id.*, 833 S.W.2d at 907.

■ The Tennessee Supreme Court rendered the decision in *Toof* while the appeal in the instant case was pending and, therefore, the changes in the law announced in that opinion regarding punitive damages apply in this case.

■ In the instant case, evidence of the defendant's financial condition was introduced during the case in chief. Financial condition was argued extensively by Mr. Pullen's counsel, both in opening argument and in rebuttal. The jury was told to "send a message to [defendant] with punitive damages" and was asked to "make the fine large enough that it hurts." The jury heard evidence of defendant's financial condition before deciding the amount of com-

1. A non-suit was taken during the trial as to defendant Terrell Strickland.

pensatory damages. Under *Toof,* the defendant's worth is not an element to be considered in arriving at the amount of compensatory damages.

■ This was a suit for malicious prosecution and the elements of damages recoverable in a malicious prosecution suit are those which "proximately result to the plaintiff, his person, property, or reputation from a previous unsuccessful civil or criminal proceeding which was prosecuted without probable cause and with malice." *Ryerson v. American Surety Co.,* 213 Tenn. 182, 185, 373 S.W.2d 436, 437 (1963).

In this case the proof showed that the out-of-pocket expenses incurred by Mr. Pullen in the prior criminal proceeding were minimal. Mr. Pullen spent approximately $450.00 for attorney's fees and a bond in connection with the criminal prosecution. He missed three days from work at a cost of approximately $180.00 per day. The *Daily Herald,* a Columbia, Tennessee newspaper, carried an item concerning Mr. Pullen's arrest on page 2. This item measured one-half inch by two inches and simply stated that he had been charged with passing a worthless check in excess of $100.00 and that bond had been set at $1,000.00. There was testimony that Mr. Pullen's family was upset by the criminal proceeding.

The proof showed that in April 1990, Mr. Pullen lost his job when his employer closed its Nashville terminal. There is nothing in the record to show that the loss of this job had anything to do with the actions of Textron. Mr. Pullen was out of work for some thirteen months and during that time he sent out resumes but received no responses. The proof produced by Mr. Pullen on this point showed that some potential employers check records that might reveal a criminal arrest. However, there was no proof that any potential employer had checked any record in Mr. Pullen's case or that his arrest on the insufficient funds check had any part in his failure to obtain work during that thirteen month period.

■ Appellate courts in reviewing a judgment based upon a jury verdict are not at liberty to weigh the evidence and decide where the preponderance lies but are limited to determining whether there is material evidence to support the verdict. If there is any material evidence to support the verdict, the judgment must be affirmed. *Crabtree Masonry Co. v. C & R Construction, Inc.,* 575 S.W.2d 4, 5 (Tenn.1978).

We are of the opinion that the material evidence does not support an award of $45,000.00 in compensatory damages and that under the circumstances, it is excessive and indicates that the jury was motivated by passion, prejudice or caprice.

We have reviewed the remaining issues raised by the parties and find them to be without merit. Following our review of this record and applying *Hodges v. S.C. Toof and Co.,* we are of the opinion that this case should be reversed and remanded to the trial court for a new trial as to both compensatory and punitive damages.

It therefore results that the judgment of the trial court is reversed and the cause remanded to the trial court for a new trial in accord with the teachings of *Hodges v. S.C. Toof and Co.* The costs of the appeal are taxed equally to the plaintiff-appellee and defendant-appellant.

TODD, P.J., and CANTRELL, J., concur.