# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MARCH 2000 Session

## SHELIA RAE GIBBS, ET AL. v. ROBIN MEDIA GROUP, ET AL. v.

## LINEBERRY PROPERTIES, INC.

**A Direct Appeal from the Circuit Court for Wilson County**
**No. 9215; The Honorable Clara Byrd, Judge**

---

### No. M1999-00820-COA-R3-CV - Filed August 25, 2000

---

This appeal arises from a slip-and-fall accident which occurred on property owned by the Defendant Lineberry Properties and leased by the Defendant Robin Media Group. The latter appeals from the jury verdict entered in the Wilson County Circuit Court. The jury assigned one hundred percent of the fault for the Plaintiff's injuries to Robin Media. After the court denied its motions for remittitur or a new trial, the present appeal arose.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which FARMER, J. and LILLARD, J., joined.

Julie-Karel Elkin, Nashville, for Appellant

Hugh Green, Lebanon, for Appellees, Shelia Rae Gibbs & Charles David Gibbs
Keene W. Bartley, Nashville, for Appellee, Lineberry Properties, Inc.

## OPINION

Robin Media Group appeals from a jury verdict entered in the Wilson County Circuit Court. For the reasons stated herein, we affirm the trial court decision.

### Facts and Procedural History

On January 21, 1994, Sheila Gibbs ("Plaintiff") traveled to the Mt. Juliet, Tennessee office of Robin Media Group ("InterMedia" or "Appellant") for the purpose of exchanging a defective

cable box.[1]  Prior to January 21, the Wilson County area had experienced sleet and snow, and ice had accumulated on the sidewalk and steps leading to the Appellant's office.  Mrs. Gibbs entered the building via steps which she noticed to be icy.   She went into the building and transacted her business.  Upon exiting the office, Mrs. Gibbs proceeded down the steps where she slipped and fell.  As a result of the fall, Mrs. Gibbs suffered several serious injuries.

The Plaintiffs filed suit against Robin Media Group, Inc., d/b/a InterMedia.  InterMedia answered the complaint and denied that it had possession or control of the portion of the premises where Mrs. Gibbs fell.  The Plaintiffs filed an amended complaint on December 10, 1996, in which they added Lineberry Properties, Inc. ("Lineberry") as a defendant.  Lineberry was the owner of the property, and the InterMedia office was operated under a lease agreement with Lineberry.  After Lineberry became a party to the lawsuit, Lineberry and InterMedia filed cross-claims against each other seeking indemnification in the event a judgment was rendered in favor of the plaintiffs.  Both defendants also filed motions for summary judgment, arguing that neither had a duty to remove the ice and snow from the premises.   Both parties' motions were denied.

The lease agreement between the parties had been prepared by William Farmer, a corporate officer of InterMedia.   The lease provided that the Appellant was responsible for "maintenance inside" the building, while Lineberry was responsible for "maintenance outside" the building.   The agreement did not specifically include or exclude the steps and sidewalk as being within the area termed "outside."  Additionally, snow and ice removal was not enumerated as being included within the term "maintenance."

After Mrs. Gibbs fell, Rae Taylor, an InterMedia employee, called an ambulance and someone contacted Mrs. Gibbs' husband, Charles.   Upon arriving at the InterMedia office, Mr. Gibbs learned that his wife had already been taken away by the ambulance. Mr. Gibbs had a conversation with Rae Taylor in which the latter stated, "I had told them that someone was going to fall and they need to get this ice up."   Taylor also stated, "Now that they've fallen, they're doing something about it."   At that time, Mr. Gibbs saw someone placing salt on the steps and sidewalk.[2]

At trial, the court admitted, over InterMedia's objection, the deposition testimony of Brenda Scott, InterMedia's representative.   That testimony dealt with the internal policies of InterMedia regarding the safety of customers on its premises.   The court also admitted, once again over InterMedia's objection, the statements of Rae Taylor made to Mr. Gibbs after the accident. Finally, the court denied InterMedia's motion *in limine* to exclude  evidence showing that InterMedia employees took measures to remove the ice from the steps after Mr. Gibbs' accident.  The jury rendered a verdict in favor of the plaintiff in the total amount of $115,000.  The jury assigned 100%

---

[1] The defendant Robin Media Group operated under the name "InterMedia" or "Tennessee Valley CableVision."  We shall refer to the entity as "InterMedia."

[2] Jeffrey Roarke, also an InterMedia employee, testified that he was contacted by a supervisor and told to put salt on the steps at the Mt. Juliet office.

of the fault to InterMedia.  Finally, the jury determined that neither defendant had breached the terms of the lease agreement.   This appeal followed.

## Law and Analysis

InterMedia has presented the following issues for our consideration: 1) whether the court erred in admitting the statements of Rae Taylor, 2) whether the court erred in admitting evidence of InterMedia's subsequent remedial measures, 3) whether the court erred in admitting evidence regarding InterMedia's internal policies and procedures, 4) whether there is material evidence to support the jury's verdict, 5) whether specific terms in the lease agreement between Lineberry and InterMedia were ambiguous, and 6) whether the court erred in its instructions regarding the interpretation of the lease agreement.  We shall consider each of these issues in turn.

### I. Statements of Rae Taylor

InterMedia claims that the statements of Rae Taylor, introduced through the testimony of Charles Gibbs, were inadmissible hearsay.  An evidentiary ruling by the trial court is a question of law, and our standard of review is *de novo* with no presumption of correctness.  City of Tullahoma v. Bedford County, 938 S.W.2d 408 (Tenn. 1997).

Much of the debate between the parties regarding this issue centers on the question of whether the statements qualify as an exception under Rule 803(1.2)(D) of the Tennessee Rules of Evidence. We do not, however, believe that the analysis ever gets to that point because the statement is not hearsay.

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  T.R.E. 801(c).  The statement at issue is Rae Taylor's statement, "I had told them that someone was going to fall and they need to get this ice up."[3]  This statement is clearly an out-of-court statement, and, in that regard, it satisfies the hearsay definition.  However, we must also consider whether the statement was offered into evidence to prove "the truth of the matter asserted."  The matter asserted is that Rae Taylor told "them" that someone was going to fall and the ice needed to be removed.  The statement is removed from the realm of hearsay because the actual truth of that assertion is irrelevant.  The statement was not presented as proof that Rae Taylor told anyone about the ice.  The statement was presented to show that someone with InterMedia, namely Rae Taylor, had knowledge that ice had built up on the steps and/or sidewalk.

---

[3] To the extent InterMedia claims error in the trial court admitting Taylor's statement that, "Now that they've fallen, they're doing something about it," we believe the decision was harmless error.  InterMedia does not dispute the subsequent remedial measures which were undertaken.  Taylor's statement is only further evidence of those measures, and its exclusion would have had little, if any, practical effect.

We believe it to be clear that the statement presented is not hearsay. The very act of making the statement is evidence that Rae Taylor had knowledge of the dangerous condition. Her knowledge, regardless of whether that knowledge was conveyed to anyone else at InterMedia, was sufficient to put InterMedia on notice of the dangerous condition, thereby invoking a duty of care. See The Vogue, Inc. v. Cox, 190 S.W.2d 307 (Tenn. Ct. App. 1945).

## *II. Subsequent remedial measures*

InterMedia also claims error in the trial court's admission of evidence showing that InterMedia employees took measures to rid the steps of ice immediately following the accident. InterMedia claims that the act of salting the steps and sidewalks was a non-admissible, subsequent remedial measure under Rule 407 of the Tennessee Rules of Evidence. Rule 407 provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissible to prove strict liability, negligence, or culpable conduct in connection with the event. **This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving controverted ownership, control, or feasibility of precautionary measures, or impeachment.**

(Emphasis added). InterMedia apparently recognizes that this evidence also goes to the issue of control, which would clearly remove it from the purview of Rule 407. However, InterMedia argues that this "one instance should not constitute evidence of control." Unfortunately, InterMedia's position is clearly contrary to the above-quoted rule. Control of the steps and sidewalk was an issue of paramount importance in this case, and Rule 407 plainly provides that it does not preclude evidence tendered for the purpose of proving control. InterMedia's act of performing these remedial measures was clearly admissible under Rule 407, and we find no basis for concluding that the trial court erred in this regard.

## *III. InterMedia's internal policies*

Brenda Scott served as the personal representative of InterMedia for the purposes of this case, and the plaintiffs introduced portions of her deposition testimony at trial. InterMedia objected to the introduction of testimony relating to its internal policies and procedures regarding the safety of customers. In essence, Ms. Scott testified that it was InterMedia's policy to maintain a safe premises for customers regardless of issues such as ownership or control. She further testified that this policy would encompass the removal of snow and ice from the steps and sidewalk. InterMedia objected

to this testimony based on rule 403 of the Tennessee Rules of Evidence.[4]

Rule 403 of the Tennessee Rules of Evidence precludes the admission of evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." InterMedia claims that the admission of its internal policies prejudiced its case insofar as the jury might have equated a breach of those procedures with a breach of legal duty. Even if we were to agree that the possibility of confusion existed, that mere possibility is not enough, under 403, to exclude the evidence. The very language of the rule places the burden upon the party seeking to exclude the evidence by requiring that the probative value be **substantially outweighed** by the dangers. The relevance and probative value of this evidence is clear. As we stated previously, issues of control and responsibility are of extreme importance as they relate to the steps and sidewalk outside the InterMedia office. We are unable to say that this evidence was unfairly prejudicial at all, much less substantially so. Accordingly, we find no error in the trial court's admission of this evidence.

*IV. Material evidence to support the jury verdict*

InterMedia claims there is no material evidence to support the finding that they are 100% at fault for Mrs. Gibbs' injuries. Specifically, InterMedia claims that Lineberry or Mrs. Gibbs herself should have been apportioned some of the fault.[5]

This court's role in regards to the present issue does not allow us to reweigh the evidence or consider where the preponderance lies. Instead, we must determine whether there is any material evidence to support the verdict, and, if there is, we must affirm the judgment. See Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 823 (Tenn. 1994); Pullen v. Textron, Inc., 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992). We are required to take the strongest legitimate view of the evidence in favor of the verdict, assume the truth of the evidence in support thereof, allow all reasonable inferences to sustain the verdict and disregard all to the contrary. Hobson v. First State Bank, 777 S.W.2d 24 (Tenn. Ct. App. 1989).

In regards to Mrs. Gibbs, InterMedia argues that a percentage of fault should have been attributed to her because she voluntarily attempted to traverse the icy steps. Essentially, InterMedia claims that Mrs. Gibbs' actions were unreasonable under the circumstances. However, there is no indication that Mrs. Gibbs was careless or failed to exercise reasonable care. Mrs. Gibbs was

---

[4] InterMedia also claims to base its objection to this evidence on rule 406, which deals with habits or routine practices. However, Rule 406 only operates as an avenue for the admission of evidence. It does not provide a basis for excluding evidence. The only reason to consider Rule 406 in this case would be if that rule served as the basis for the trial court's decision to admit evidence of InterMedia's internal policies and procedures. This does not appear to be the case. Therefore we shall not consider Rule 406.

[5] In this section, we shall only deal with the verdict as it relates to Mrs. Gibbs. We will consider this issue as it relates to Lineberry in the subsequent sections of the opinion.

confronted with the decision of whether to maneuver the ice in order to enter the building. It does not appear that she would have been able to enter the building without encountering ice.[6] Her voluntary decision to maneuver the ice does not necessarily make her careless. In Hellon v. Trotwood Apartments, Inc., 460 S.W.2d 372 (Tenn. Ct. App. 1970), the court stated:

> Where, however, the known danger is not readily avoidable and is such as to effectively obstruct the path of plaintiff, plaintiff is put to the decision of whether he will take the inevitable risk of proceeding through the danger or will abandon his intended course and destination altogether. When such a situation presents itself, the question of whether the plaintiff undertook a greater risk than an ordinarily prudent person would take under the circumstances is usually for the jury.[7]

Faced with the facts, the jury returned a verdict finding no fault lay with Mrs. Gibbs. As stated previously, it is not this court's place to usurp the judgment of the jury unless no material evidence supports the jury's decision. In the present case, there was ample evidence upon which InterMedia's liability could be predicated. The question of whether some percentage of the fault should have been attributed to Mrs. Gibbs was properly left to the jury, and we have neither the authority nor the inclination to disturb the verdict.

*V. Ambiguity in the lease agreement*

In this issue, InterMedia claims error in the trial court's ruling the term "maintenance" to be ambiguous. The lease agreement provided that Lineberry was responsible for maintenance outside the building while InterMedia assumed the same responsibility for the inside of the building. The specific question in this regard is whether the term "maintenance" included snow and ice removal. Pursuant to the trial court's determination that the term was ambiguous, the jury was allowed to determine whether "maintenance" encompassed snow and ice removal.

As an initial matter, we find no error in the trial court's finding that the term "maintenance" was ambiguous. We are no more sure what the term means within this context than was the trial court. Moreover, having made such a determination, the issue was correctly submitted to the jury. See Hendrix v. City of Maryville, 431 S.W.2d 292 (Tenn. Ct. App. 1968)("When the contract is in writing and its terms are indefinite and ambiguous, or if the evidence shows that more than one inference can be drawn from the relationship, or if there is evidence of circumstances and relations outside of the written agreement, the written contract alone cannot be determinative but a question of fact arises which must be determined by the jury").

---

[6] Jeffrey Roarke, the InterMedia employee who salted the steps after the accident, testified that there was no reasonable way to enter the building without encountering ice.

[7] We recognize that this case was decided before the adoption of comparative fault in Tennessee. That fact does not, however, make the quoted passage any less applicable. Fault, or lack thereof, is generally to be decided by the trier of fact. The differences between contributory negligence and comparative fault are of no consequence to the outcome in this case.

The lease clearly did not speak to snow and ice removal. In the long relationship between the parties, InterMedia had never requested that Lineberry perform this function. The evidence showed that InterMedia had notice of the icy conditions while there is no evidence showing that Lineberry had such notice. The jury's determination that Lineberry was not responsible for removing the ice which led to Mrs. Gibbs' accident is clearly supported by material evidence and we will not disturb that finding. See T.R.A.P 13(d).

*VI. Jury Instructions*

In its final issue, InterMedia claims that the trial court erred in instructing the jury that ambiguities in a contract were to be construed against the drafter. This issue is without merit. Having found the language in the lease to be ambiguous, the trial court complied with applicable law in giving the instructions at issue. See Spiegel v. Thomas, Mann & Smith, 811 S.W.2d 528 (Tenn. 1991) (noting the general rule that ambiguities in contracts are construed against the drafter ) (citing Hanover Ins. Co. v. Haney, 425 S.W.2d 590 (1968)).

**Conclusion**

For the reasons stated herein, we affirm the trial court decision. Costs of this appeal are taxed to the Appellant, Robin Media Group, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE