IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2001 Session

# RAYMOND D. WORKMAN, ET UX V. WAL-MART STORES EAST, INC., ET AL.

### Appeal from the Circuit Court for Maury County
### No. 8799    Judge Robert L. Holloway, Jr.

---

### No. M2001-00664-COA-R3-CV - Filed April 4, 2002

---

This is an appeal by Wal-Mart, Inc., from a jury verdict and a judgment totaling $30,000 in favor of Raymond D. Workman and Nola Ann Workman, for damages caused by a slip and fall Mr. Workman suffered at Wal-Mart's store.  Wal-Mart, Inc. has appealed this judgment insisting that the trial court erred by not setting aside the jury verdict and directing a verdict in their favor, or not granting a new trial.   For the reasons stated in this opinion, we affirm the trial court's decision and remand the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

J.S. DANIEL, SP. J., delivered the opinion of the court, in which BEN H. CANTRELL, P. J., M.S., and PATRICIA J. COTTRELL, J, joined.

Dwight Tracey Shaw and G. Andrew Rowlett, Nashville, Tennessee, for the Appellants, Wal-mart Stores East, Inc., et al.

Charles Timothy Tisher, Columbia, Tennessee, for the Appellees, Raymond D. Workman and Nola Ann Workman.

## FACTS

On or about November 28, 1998, Raymond D. Workman and his wife, Nola Ann Workman, went shopping at the Wal-Mart store in Lawrenceburg, Tennessee.  While passing from a carpeted portion of the store to a tiled portion of the store's main aisle, Mr. Workman's right foot stepped into a thick, clear liquid that formed a circle around a wicker basket on the tile floor. The basket was approximately 10 to 12 inches in diameter, wrapped in cellophane, and lying upside down on the floor.  Liquid was coming from under the basket, apparently leaking from the containers within the basket.  Sufficient time had elapsed from the overturning of the basket for liquid, which Mr.

Workman described as "real slippery and real thick" and "something like bath oil," to form a pool that was 2 to 2 ½ feet in diameter. When he stepped into the liquid, Mr. Workman's right foot slipped out from underneath him and he came down on his left knee. Upon trying to rise, Mr. Workman fell the rest of the way to the floor, and his clothing became saturated with the liquid. Getting up off the floor, Mr. Workman went to find his wife. Mr. and Mrs. Workman then returned to the scene of the slip and fall approximately 10 to 12 minutes after its occurrence. Mr. Workman testified that the area had been cleaned up and there was still a wet place where the floor had been mopped. Additionally, someone had placed a little, yellow, foldout sign on the floor to indicate that the area was wet. Other than one employee who was busy with customers, Mr. Workman did not see another employee until he reached the front of the store. Although a veteran police officer with 26 years of experience, Mr. Workman did not, at that time, make a formal report of his injury. Mr. Workman's explanation for not immediately reporting the fall was that he was embarrassed and he thought he would recover even though he had considerable knee and ankle pain at the time. It subsequently developed that Mr. Workman was not all right, and Mr. Workman's left knee eventually required fluid removal and surgery. He also experienced pain and swelling in his ankle. Mr. Workman returned to the store and made a formal report in January 1999, after he found out that he needed surgery. He did this hoping Wal-Mart would defray his medical expense.

Mr. Workman testified that he did not knock the basket onto the floor, and he did not know who did. Mr. Workman also did not know how long the basket had been on the floor. No other witness testified how long the basket or the liquid had been on the floor, or who had caused them to be there. No witness testified about when Wal-Mart became aware that this condition existed. The testimony was that the spill was on the main, traveled aisle of the store, and that a sufficient interval of time had elapsed for the contents of containers within a cellophane wrapped basket to escape.

The trial testimony of one of Wal-Mart's representatives conflicted with the pretrial deposition testimony. At a pretrial deposition Mr. Cummings provided a list that identified the employees who were working and the ones who were absent. This list indicated 18 working plus a few cashiers and 13 absent. However, at trial Mr. Cummings testified that based on who was scheduled to work, Wal-Mart was only short 3 or 4 people on the night and morning when the accident occurred.

## ISSUES

Wal-Mart insists that the trial court was in error in failing to set aside the jury verdict or to grant a directed verdict in its favor at the conclusion of the Plaintiff's proof and also at the conclusion of the trial. This assertion is basically that the trial court failed to direct a verdict under the provisions of Rule 50 of the Tenn. R. Civ. P.. It is Wal-Mart's position that such a remedy was merited because there was no material evidence of causation or evidence that Wal-Mart created a dangerous condition, had notice of a dangerous condition or had constructive notice of a dangerous condition. It is Wal-Mart's position that the Plaintiff cannot recover under any theory of premises liability without proof of how long the spill was present.

2

Wal-Mart also contends that the trial court erred in failing to grant a new trial in this case. It is Wal-Mart's position that a new trial was warranted because the jury verdict was against the weight of the evidence and that the trial court's jury instructions concerning the Plaintiff's ability to recover for damages reasonably certain in the future were in error based on the proof at trial.

## ANALYSIS

We will first address Wal-Mart's complaint that the trial court committed reversible error in failing to grant Wal-Mart's motion for directed verdict. A trial court faced with a motion for directed verdict should only grant such a motion where "a reasonable mind could draw but one conclusion," and that conclusion would be favorable to the moving party. Holmes v. Wilson, 551 S.W.2d 682, 685 (Tenn. 1977). In making this decision, the trial court must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor and disregarding any evidence to the contrary. Cecil v. Hardin, 575 S.W.2d 268, 270 (Tenn. 1978). Only where the plaintiff's proof failed to meet this standard may the directed verdict be granted either before or after trial.

With this standard in mind, this Court has reviewed the record and the law applicable to premises liability. The basis of premises liability for injury to customers is well settled in Tennessee. Business owners are held liable for negligence in allowing a dangerous condition or defect to exist on their premises if that condition or defect was created by the owner, operator or his agent, or if the condition is created by someone else, there was actual or constructive notice that the dangerous condition or defect existed prior to the injury. Hardesty v. Service Merchandise Co. Inc., 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997); Chambliss v. Shoney's, Inc., 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987); Benson v. H. G. Hill Stores, Inc., 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985); Jones v. Zayre, Inc., 600 S.W.2d 730, 932 (Tenn. Ct. App. 1980); Paradiso v. Kroger Co., 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). In reviewing cases of this type it is rare indeed when a premises liability case is based on a dangerous condition or defect created by the business owner. The vast majority of these cases fall into the second category of claims, where the defect or condition is caused by someone else and the assertion is that the business owner was negligent in failing to address the dangerous condition or defect after he had actual or constructive notice of the dangerous condition or defect.

Mr. Workman's case clearly fell into the constructive notice category of these claims as no evidence existed that Wal-Mart created this spill or had actual notice of it. The constructive notice type of case is virtually always a circumstantial evidence case where the circumstances surrounding the condition or defect must be considered by the trier of fact to determine if it was more probable than not that the business owner should have known and responded to the defect and/or condition in a more timely fashion to prevent the injury or loss. No authorities have been advanced by Wal-Mart that support their proposition that a plaintiff, such as Mr. Workman, must prove exactly how long a spill was present in order to prevail under the constructive notice theory of premises liability. What the plaintiff is required to prove is that the dangerous or defective condition existed for such a length of time that the Defendant knew or in the exercise of ordinary care should have known of its existence. Jones, 600 S.W.2d at 732. In Jones, the Plaintiff fell as a result of stepping on a clear

3

plastic clip which was approximately the size of a paper clip and was used in the store to attach clothing items to hangers. Id. Those circumstances were insufficient to establish premises liability for the business owner because they failed to circumstantially establish how long the clip had been on the floor or how it got there. Id. It is true that a plaintiff must present proof as to the length of time that the dangerous condition existed in order to establish constructive knowledge of the hazard by the premises owner. However, that proof may be in the form of circumstantial evidence, and an inferred fact may be the basis of a further inference to the ultimate sought - for fact. Benson v. H. G. Hill Store, Inc., 699 S.W.2d at 563. The Benson case is surprisingly similar to the present case, and this Court accepted circumstantial evidence as a reasonable method of proof to establish the premises owner's constructive notice of the dangerous or defective condition that ultimately caused injury. Id.

Here Mr. Workman established that the oily substance was on a main, traveled aisle of the store, that the incident occurred on the busiest shopping day of the year, that the store was not fully staffed, that the overturned basket was covered with cellophane, yet sufficient time had elapsed to allow the thick, oily substance on the floor to escape its containers and the enveloping cellophane-covered basket and to create an area of 2 to 2 ½ feet of oily, slippery substance on the floor of this portion of the business establishment. These circumstances provide a reasonable basis for the jury's conclusion that a sufficient time interval had passed to charge the premises owner with constructive notice of this dangerous condition.

Wal-Mart's claim that Mr. Workman failed to prove causation is an extension of their claim that there was inadequate proof of constructive notice of the dangerous condition. A business premises owner or operator must exercise ordinary care to maintain the premises in a reasonably safe condition. Patterson v. Kroger Company, 389 S.W.2d 283 (Tenn. Ct. App.1964). When the premises owner has actual or constructive notice of the defective or dangerous condition, this duty to exercise ordinary care is breached when the business owner fails to remedy the condition. Thereafter, those who are injured by the defective or dangerous condition may recover damages proximately related to the breach. Here it is not disputed that Mr. Workman fell in the substance at the Wal-Mart store. What is disputed by Wal-Mart is that they had constructive notice of the defective or the dangerous condition such that a breach of the duty of care was established by the proof.

The jury, as the trier of fact in this case, accredited Mr. Workman's and his witnesses' testimony and concluded that Wal-Mart had constructive knowledge of the dangerous condition, and failed in their duty of care to correct this condition prior to Mr. Workman's fall, which was caused by the hazardous condition.

Findings of fact by Tennessee juries in civil cases are accorded such respect that they will not be set aside unless there is an absence of material evidence to support the verdict. Tenn. R. App. P. 13 (d). This Court is not at liberty to "reweigh the evidence and consider where the preponderance lies"; on the contrary, we may only "determine whether there is **any** material evidence to support the verdict, and, if there is, [we] must affirm the judgment." Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999)(emphasis added). See also Reynolds v. Ozark Motor Lines, Inc., 887

4

S.W.2d 822, 823 (Tenn. 1994); Pullen v. Textron, Inc., 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992). In this case we find that material evidence exists to support the finding of constructive notice of the dangerous condition or defect against Wal-Mart. Therefore, we overrule Wal-Mart's assignment of error concerning the trial court's failure to grant a new trial or grant a directed verdict either during or after these proceedings.

Wal-Mart next contends that the trial court should have granted a new trial in this matter because the court's instructions to the jury were in error. It is Wal-Mart's contention that the court charged the jury that the Plaintiff could recover for damages reasonably certain to occur in the future when there was no expert medical proof reflecting that the Plaintiff was impaired or would need medical services in the future. The actual complained of charge which the court delivered stated as follows:

> "The next element of damages that the plaintiff may recover is for reasonable and necessary expenses for medical care, services, and supplies actually given in the treatment of a party as shown by the evidence and the present cash value of medial expenses reasonably certain to be required in the future. . . ."

Further in the charge the court provided the jury with the following standard jury charge, T.P.I. 3 - Civil 15.11:

> The Court has given you various rules of the law to help guide you to a just and lawful verdict. Whether some of these instructions will apply, will depend upon what you decide are the facts. The Court's instructions on any subject including instructions on damages must not be taken by you to indicate the Court's opinion of the facts you should find or the verdict you should return . . . ."

The above jury charge was presented to the jury at the conclusion of all the proof and argument. Prior to a lunch recess and before the close of proof, there were extensive discussions between the court and the attorneys about the jury instructions. Much of those discussions centered around objections by Wal-Mart concerning the proposed charge including consideration of future pain and suffering. Eventually Mr. Workman's counsel withdrew his request for a jury charge that would include consideration by the jury of future pain and suffering. The only medical expert presented in this case was that of Dr. Kenneth Moore who had surgically treated Mr. Workman's knee by excising a pre-patellar bursa. Dr. Moore testified that the body normally regenerates a normal bursa fluid sac such as the one that he had removed. He also opined that there would be no future medical treatment and that Mr. Workman would not experience any permanent pain and suffering from the knee. However, Mr. Workman testified to the contrary. He insisted at the trial of this case that he was still suffering from burning and stinging around his knee cap and that he had encountered difficulty in getting up and down in his daily activities at work and at home.

The jury charge dealing with medical expenses tracks exactly the standard T.P.I. 3 - Civil 14.11 and it appears that there were no facts in the record that would support the discretionary portion of the instruction which calls for the jury to consider the present cash value of medical

5

expenses reasonably certain to be required in the future. However, no objection was raised to the instruction when it was given or at the conclusion of the instructions. Wal-Mart first complained about the instructions at its motion for new trial.

Trial courts have a duty to give substantially accurate instructions with regard to every fact and theory raised by the pleadings and supported by the proof. Ingram v. Earthman, 993 S.W.2d 611, 635 (Tenn. Ct. App. 1998); Souter v. Cracker Barrel Old County Stores, Inc., 895 S.W.2d 681, 684 (Tenn. Ct. App. 1994). However, instructions are not required to meet a standard of perfection. Benson v. Tennessee Valley Elec. Coop., 868 S.W.2d 630, 642-43 (Tenn. Ct. App. 1993); Grissom v. Metropolitan Gov't of Nashville, 817 S.W.2d 679, 685 (Tenn. Ct. App. 1991). The jury charge will not be invalidated if it "fairly defines the legal issues involved in a case and does not mislead the jury." Otis v. Cambridge Mut. Fire Ins. Co., 857 S.W.2d 439, 850 (Tenn. 1992).

Appellate courts review the entire instructions in the same manner that the jury considered them. An erroneous instruction will not necessarily be considered reversible error if the trial court later explains or corrects the instruction. Ingram v. Earthman, 993 S.W.2d at 636; In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987).

In considering complaints concerning the trial court's jury instruction, this Court must not single out any one individual instruction but must consider the questioned instruction in the context of the entire charge. Otis, 857 S.W.2d at 446. We have reviewed the entire charge against these standards and find that although the specific charge concerning future medical expenses was inappropriate, considering the charge in its entirety, we find that the charge fairly defined the legal issues involved and did not mislead the jury. We also conclude that Wal-Mart's counsel's failure to raise the issue with the trial court at the conclusion of the jury instruction removed that court's opportunity to correct this error. Relief is not required to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of such an error. Tenn. R. App. P. 36(a). Therefore, we conclude that this issue is without merit.

In conclusion, we find that the weight of the evidence supports the jury's conclusion that sufficient circumstances were proven to establish an adequate time interval that Wal-Mart was charged with constructive knowledge of the defective condition and failed to respond timely to prevent Mr. Workman's injury. Therefore, we conclude that the judgment is to be affirmed. This case is, therefore, remanded to the trial court for enforcement of its judgment and costs are assessed against Wal-Mart.

_____

J. S. DANIEL, JUDGE