Barbara **REYNOLDS** and Jason
Stephens, Plaintiffs–
Appellants,

v.

**OZARK MOTOR LINES, INC.,**
Defendant–Appellee.

Supreme Court of Tennessee,
at Jackson.

Oct. 31, 1994.

Douglas S. Johnston, Jr., Nashville, for plaintiffs-appellants.

John Marshall Jones, Young & Perl, P.C., Memphis, for defendant-appellee.

## *OPINION*

REID, Justice.

This case presents for review the judgment of the Court of Appeals, which reversed jury verdicts for the plaintiffs, granted the defendant's motion for directed verdicts and dismissed the suit. This Court finds the

record supports the judgment of the trial court, which is reinstated.

The Court of Appeals held that a claim for retaliatory discharge cannot be based upon the termination of employment caused by an employee's refusal to violate the safety provisions of the Tennessee Motor Carriers Act. T.C.A. § 65–15–101 *et seq.* (1993) ("Act"). That decision rests upon the court's finding that the Act does not by its terms govern employment relationships, nor does it provide any basis for a public policy exception to the employment at-will law of Tennessee.

The defendant, Ozark Motor Lines, Inc. ("Ozark"), is a motor carrier subject to the provisions of the Act. When the plaintiffs were discharged on December 27, 1989, they had been employed as team truck drivers by Ozark since March 1985. The cause of their discharge was the essential issue of fact found by the jury with regard to liability.

There was conflicting testimony regarding the cause of the plaintiffs' discharge. The plaintiffs' testimony, corroborated as to the essential issue by the defendant's safety director, showed that their employment was terminated because they refused to commence a trip from Memphis to Chicago in a truck they had not driven before without having adequate time to inspect it. Ozark's proof, with the exception of the testimony of its safety director, was that the plaintiffs refused to operate a truck other than the one usually assigned to them. In deciding that plaintiffs were discharged because they refused to operate a truck they did not have time to inspect, the jury obviously resolved the conflicting evidence in favor of the plaintiffs.

■ Even though the Court of Appeals stated that the determinative issue in the case is one of law, the opinion contains an extensive recitation of testimony relied upon by the defendant, only noting that the testimony regarding the circumstances of the plaintiffs' discharge was disputed. The appellate courts do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict. Appellate courts are limited to determining whether there is material evidence to support the jury's verdict. Where the record contains material evidence

supporting the verdict, the judgment based on that verdict will not be disturbed on appeal. *Forrester v. Stockstill,* 869 S.W.2d 328, 329–30 (Tenn.1994); *Hodges v. S.C. Toof and Co.,* 833 S.W.2d 896, 898 (Tenn.1992). There is in the record material evidence supporting the jury verdicts.

The jury verdicts establish that the plaintiffs were discharged because they refused to violate regulations adopted pursuant to the Act which require that the driver of a motor vehicle inspect the vehicle and be satisfied that the vehicle is in safe operating condition before it is operated on a public road.

However, the Court of Appeals held, as a matter of law, that termination of the plaintiffs' employment because they refused to drive a truck onto the public highway without having adequate time to perform a safety inspection does not expose the employer to an action for retaliatory discharge. The Court of Appeals reached its conclusion without discussing this Court's holding in *Hodges v. S.C. Toof, Inc.,* 833 S.W.2d 896 (Tenn. 1992).

In *Hodges,* the Court, after reviewing the exceptions to the employment at-will rule in Tennessee, found that the statutory remedy of reinstatement and reimbursement of lost wages was not the exclusive relief available to an employee discharged because of extended jury service. In allowing an action for compensatory and punitive damages, the Court in *Hodges* held:

> [T]he tort action of retaliatory discharge [is] available to employees discharged as a consequence of an employer's violation of a clearly expressed statutory policy.

*Id.* at 899. In *Hodges* and in *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 556 (Tenn.1993), the Court reaffirmed its statement in *Chism v. Mid–South Milling Co.,* 762 S.W.2d 552, 556 (Tenn.1988), that the action will lie where the employer has violated a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision and the employer's violation was a substantial factor in the employee's discharge.

Although the Court in *Anderson* dismissed the employee's retaliatory discharge claim because she failed to prove causation, the Court observed:

The cause of action for retaliatory discharge defines the balance point between the employment-at-will doctrine and rights granted employees under well-defined public policy. By statute, an employer cannot discharge employees because of their race, religion, sex, age, physical condition or mental condition (T.C.A. §§ 4–21–401(a)(1) (1991), 8–50–103(a) (Supp.1992)), because they report work place safety violations (T.C.A. § 50–3–106(7) (1991)), because they miss work to perform jury duty (T.C.A. § 22–4–108(f) (Supp.1992)), or because they refuse to participate in or be silent about illegal activity at the work place (T.C.A. § 50–1–304 (1991)). In addition to the protection afforded by statutes, the Court in *Chism v. Mid–South Milling Co., Inc.,* 762 S.W.2d 552, 556 (Tenn.1988), suggested several examples of clearly defined public policies which could warrant the protection provided by an action for retaliatory discharge.

*Anderson v. Standard Register Co.,* 857 S.W.2d at 556. The Court in *Chism* stated:

Examples of clearly defined public policies which warrant the protection provided by this cause of action may be found in the case of *Petermann v. International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959) in which an employee was discharged for refusing his employer's demand that he commit perjury before a legislative committee. In *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985) an employee was discharged because she insisted upon obeying a lawful subpoena. In *Sides v. Duke University,* 74 N.C.App. 331, 328 S.E.2d 818, *app. den'd* 314 N.C. 331, 335 S.E.2d 13 (1985) the employee was discharged because she had insisted upon testifying truthfully in litigation. In *Nees v. Hocks,* 272 Ore. 210, 536 P.2d 512 (1975) an employee was discharged for honoring a subpoena to jury duty, and in *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) the employee was dis-

charged for not seeking to be excused from jury duty.

There have been several cases where employees were discharged for refusing to falsify records or to acquiesce in the mislabelling of unsafe or defective products. *E.g., Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980) (quality control director discharged for calling attention to specific statutory standards where he was personally exposed to sanctions); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.App.1985) (refusal to certify falsely the conduct of required testing of products); *Harless v. First National Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978) (reporting consumer fraud violations); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984) (insistence by employee that employer comply with federal statute involving foreign corrupt practices). In each of these cases, however, very specific statutory violations were charged, and usually the employee's personal exposure to civil or criminal sanctions was emphasized.

*Chism v. Mid–South Milling Co.,* 762 S.W.2d at 556.

The duties imposed by the Act are even more compelling than in some of the cases listed in *Chism.* The duties imposed by the Act upon owners and operators relate directly and substantially to the safety of all persons using the streets and highways. Section 65–15–101(3) declares that one of the purposes of the Tennessee Motor Carriers Act is to "[p]rotect the welfare and safety of the traveling and shipping public in their use of the highways, and in their contact with the agencies of motor transportation and allied occupations." Pursuant to T.C.A. § 65–15–113(a), the Public Service Commission has promulgated various regulations, including Regulation 1220–2–1–.27, which requires truck drivers to perform pre-trip inspections on their trucks and further mandates that the driver not operate the vehicle until the inspection has been completed. Similarly, there is imposed on the owner the duty not only to allow but to require its drivers to perform such inspections. One federal regulation adopted by the Commission also pro-

vides that a driver must perform a pre-trip inspection which satisfies the driver that certain critical parts of the truck are operating properly. Tenn.Comp.R. & Regs. 1220–2–1.20 (1992); 49 C.F.R. § 396.13(a) (1993). Violation of these provisions by a driver or an employer exposes them to criminal penalties. *See* T.C.A. § 65–15–122.

 These statutes and regulations clearly indicate that the legislature, in enacting the Tennessee Motor Carriers Act, has declared that the public policy of Tennessee includes the protection, safety, and welfare of the traveling public, including those persons who operate motor vehicles regulated by the Act. Retaliatory discharge of employees for refusing to violate those provisions designed to protect the public would seriously impair the legislative plan for ensuring highway safety.

Ozark's argument that the legislature would not have enacted T.C.A. § 50–1–304 in 1990 had a common law cause of action for retaliatory discharge existed outside the context of workers' compensation is not persuasive. The statute provides in part that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." T.C.A. § 50–1–304(a) (1991). This Court in *Hodges* cited the same statute as evidence of the existence of the common law action for retaliatory discharge. In *Hodges,* the Court stated, "Given that our recognition in *Clanton* of a common law tort action for retaliatory discharge predated the 1986 amendment to T.C.A. § 22–4–108 ... the statutory remedies must be considered cumulative." *Hodges,* 833 S.W.2d at 899. The legislation further states that the remedy was not intended to be exclusive. *See* T.C.A. § 50–1–304(c).

 The elements stated in the Court's previous decisions to constitute a cause of action for retaliatory discharge are present in this case: an employment at-will relationship; a clear declaration of public policy which imposes duties upon the employee or employer; and discharge of the employee for refusing to violate those duties.

 The trial judge properly refused to direct a verdict for the defendant and sub-

mitted the case to the jury upon a proper instruction. The jury verdicts are supported by material evidence. Consequently, the decision of the Court of Appeals must be reversed.

The trial court did not err in allowing an amendment to the plaintiffs' motion for the assessment of discretionary costs or in assessing against the defendant the costs of court reporter services and the fees and expenses of the plaintiffs' expert witness.

The judgment of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

Costs are assessed against the defendant.

DROWOTA, ANDERSON and BIRCH, JJ., concur.

O'BRIEN, C.J., concurs in result.