IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2001 Session

### BRENDA L. TIPTON v. RICHARD G. JONES, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 97CV-1020    Samuel H. Payne, Judge**

**FILED MAY 30, 2001**

**No. E2000-01860-COA-R3-CV**

Brenda L. Tipton ("Plaintiff") filed this lawsuit seeking damages for personal injury. Allstate Insurance Company ("Allstate"), Plaintiff's uninsured motorist carrier, filed a motion in limine seeking to exclude portions of the testimony of Plaintiff's treating physician because it was not based upon a reasonable degree of medical certainty. Allstate also claimed that the jury verdict was excessive and it was entitled to a remittitur or a new trial. We affirm the Trial Court's evidentiary rulings and its refusal to grant a remittitur or new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

John T. Rice, Chattanooga, Tennessee, for the Appellant Allstate Insurance Company.

John D. Agee, Kingston, Tennessee, for the Appellee Brenda Tipton.

# OPINION

## Background

This lawsuit arose from an automobile accident which occurred in Hamilton County, Tennessee, on May 31, 1996. Plaintiff sued Richard Jones ("Defendant") for injuries she sustained as a result of the accident. Defendant was uninsured, and Plaintiff's uninsured motorist carrier, Allstate, undertook the defense of the case.

The deposition of Dr. Joel Ragland ("Ragland") was taken for proof approximately two years before trial.[1] After Ragland's deposition was taken, Allstate filed a motion in limine seeking to exclude various items of evidence. Plaintiff never filed a written response to the motion. The only issues concerning the items of evidence Allstate sought to exclude in its motion that were not resolved prior to trial involved portions of Ragland's testimony. The Trial Court instructed counsel that it would address these objections when the deposition was read at trial, stating it would "rule on them as they come along."

The only issue presented to the jury was the amount of damages to which Plaintiff was entitled because Defendant's liability for the accident was admitted. At trial, Plaintiff testified she had been employed by the Kingston Police Department as a secretary and records clerk for over ten years. Plaintiff stated that while driving to visit her elderly father in Tiftonia, she was struck in the rear of her vehicle by Defendant. Plaintiff described herself as being hysterical immediately after the accident. She stated she was frozen, hurting, and waiting for help. Plaintiff hit the steering wheel and her mouth and neck were hurting. She "was just hurting all over." The ambulance attendants put a collar around her neck, placed her on a board, and transported her to the hospital. While at the hospital, she described the pain as going down her neck, part of her shoulder and into her back. Plaintiff stayed with her sister for a few days after being released from the hospital. She essentially remained in bed the entire time. Her sister brought her food and helped her go to the bathroom. Plaintiff missed two or three days of work the week following the accident.

Plaintiff testified that she experienced pain in her neck during the first week after the accident, and that it started to move further down her body. When her condition did not improve, Plaintiff made an appointment with Ragland. Initially, her primary complaint was neck and shoulder blade pain. She told him that she hurt all over, but does not recall specifically mentioning her lower back. By the time of her second appointment with Ragland, her condition had worsened and the pain was going down her back and left leg. Ragland prescribed physical therapy and Plaintiff was off work for several days. Plaintiff testified that after the physical therapy was completed, she still had problems with pain in her back and leg, but the neck pain had improved somewhat. Plaintiff was prescribed a TENS unit which helped her "some" and which she continued to use "some" at the time

---

[1] The Trial Court granted a continuance at the request of Allstate, the trial was temporarily stayed as a result of Defendant's filing bankruptcy, and the trial was "bumped" by other cases on other days it had been scheduled. This accounts for the delay between the filing of the Complaint and the trial.

of trial. Plaintiff testified that she still has pain in her back and left leg which at times is constant. She has trouble sitting for a prolonged period and going up steps and bending. She occasionally has neck pain and sitting at the computer and typing makes the neck pain worse. Plaintiff no longer goes to flea markets or craft fairs, no longer takes her grandchildren to the park, and no longer walks with co-workers. She also is limited in the amount of weight she can lift. Plaintiff incurred $3,930.00 in medical bills. She claimed to have missed a total of fourteen days of work as a result of the injuries and was claiming lost wages in the amount of $1,004.64, based on her hourly rate of $8.97. On cross-examination, Plaintiff admitted that she did not complain to Ragland about lower back pain until July 15, 1996. At that time, she reported to Ragland that she had been having lower back pain since approximately June 23, 1996, some 23 days after the accident.

Plaintiff's sister, Ms. Joy Jackson ("Jackson") also testified. Jackson stated that she went to the hospital shortly after the accident happened, and Plaintiff was crying. Plaintiff was in a neck brace and was immobilized. Plaintiff stayed with Jackson for a few days after being released from the hospital. Jackson stated that Plaintiff was in considerable pain after the accident. The only time Plaintiff got out of the bed was when she had to go to the bathroom, and Jackson would assist her. Jackson drove Plaintiff home to Kingston, Tennessee, three days after the accident. Jackson returned to Kingston the next weekend, at which time Plaintiff was still in a considerable amount of pain.

The jury awarded Plaintiff damages in the amount of $20,000.00 for personal injuries, medical expenses, and lost wages. Judgment on the verdict was entered by the Trial Court. Allstate filed a Motion for Remittitur and to Alter or Amend pursuant to Rule 59.04 of the Tenn. R. Civ. P. Allstate claimed that the verdict was above the "upper range of reasonableness, and represents passion, prejudice or caprice by the jury." Allstate also filed a Motion for New Trial and/or for a Directed Verdict pursuant to Rules 59.01 and 59.02 of the Tenn. R. Civ. P. Allstate claimed that the Trial Court's failure to sustain its objections as to portions of Ragland's testimony was reversible error because Plaintiff failed to carry her burden of proof that the medical expenses and care and treatment related to the lumbar or lower back region were reasonable, necessary, and causally related to the accident. Alternatively, Allstate requested the Trial Court to sustain its directed verdict on the limited issue as to the causal relationship between the lumbar back injury and related medical expenses and the accident. Allstate also claimed it was error for the Trial Court to allow the disputed testimony to be read without also reading the objections made during the deposition. In its memorandum in support of its post trial motions, Allstate stated: "In point of fact the Court overruled all objections by the defendant to any of the examination of the plaintiff of Dr. Ragland, but reserved those objections and none were 'waived.'"

Plaintiff filed a Motion for Discretionary Costs seeking: the deposition fee of Ragland ($600.00); and court reporter fees for the deposition of Plaintiff ($105.00), Ragland ($228.00); and the court reporter's appearance at trial ($100.00). The Trial Court granted Plaintiff's motion only with respect to Ragland's deposition fee ($600.00) and the court reporter fee for that deposition ($228.00). At the same time, the Trial Court denied Allstate's motion for a new trial and

its motion for a remittitur. As to the amount of the jury verdict, the Trial Court stated that while the verdict was high, it was reasonable. Allstate appealed.

## Discussion

We first address the evidentiary issues pertaining to the testimony of Ragland. Questions of the competency and admissibility of expert testimony are left to the sound discretion of the trial court. *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). A trial court's determinations on such questions will be overturned on appeal only where an abuse of discretion has been shown. *Id.* at 263-64. For purposes of this appeal, we accept that the Trial Court overruled all of the objections with regard to Ragland's testimony since he let that testimony be presented to the jury.

In Allstate's motion in limine, and on appeal, the primary objection is to testimony of Ragland which Allstate claims was not based upon a reasonable degree of medical certainty. The first question objected to came after Ragland testified regarding his initial examination of Plaintiff. After describing the medical history provided by Plaintiff, Ragland was asked if he was "able to form any conclusion as to her condition at that time". Allstate objected to the form of the question. Ragland then testified that in his opinion, Plaintiff suffered a whiplash-type cervical strain injury. The next question posed to Ragland was whether that opinion was within a reasonable degree of medical certainty, to which he responded "Yes." While the sequence of these questions may have been better if reversed, Allstate's argument that this opinion testimony was not based on a reasonable degree of medical certainty is without merit because it clearly was.

Ragland was then asked what he meant by a "cervical strain", and Allstate again objected to the form of the question. Ragland responded that a "strain in general is when a part of the body goes in a direction or to an extent over and above what it would normally do in normal daily living. It can result in pain, stiffness, those type symptoms. A strain is not something you can see on a film or MRI or anything else necessarily. It's what we consider a soft tissue injury.…" Ragland then was asked if there was an actual tearing of the musculature with a soft tissue injury. Allstate objected to the form of the question. Ragland answered that sometimes there is a tear and sometimes there is just an overextension from the normal position. As to the Plaintiff's situation, he could not tell for sure if there was a tear, but if there was it was not significant. At the beginning of the deposition, Allstate stipulated to Ragland's qualifications "to opine in his area of expertise", which is neurosurgery. This is exactly what Ragland did when asked what a "cervical strain" was and whether such a strain would involve a tearing of the musculature. He also testified that he could not be sure if Plaintiff had any tearing of the musculature. All of this testimony is within Ragland's area of expertise. Ragland's explaining to the jury the type of injury Plaintiff suffered (i.e. cervical strain) as a result of the accident was certainly "scientific, technical, or other specialized knowledge [that] will substantially assist the trier of fact to understand the evidence or to determine a fact in issue …." *See* Tenn. R. Evid. 702. The Trial Court did not abuse its discretion in allowing this testimony.

The next line of questioning that Allstate objected to was Ragland's testimony that it was reasonable for Plaintiff to miss three days from work following the accident due to her medical condition. Allstate objected because Ragland was not a vocational rehabilitation expert and this testimony was speculative. In Allstate's memorandum in support of its motion for a remittitur, Allstate agreed that the time Plaintiff missed from work immediately following the accident was reasonable. Consequently, we need not decide if the admission of this evidence was error because even if it was, it would be harmless given the concession that the time missed from work immediately following the accident was not unreasonable. *See* Rule 36(b) of the Tenn. R. App. P.

Next, Ragland was asked what his impression of Plaintiff's condition was after treating her on September 6, 1996. Allstate objected to the form of the question. Ragland then stated that his impression was Plaintiff had radiculopathy or nerve irritation at the fifth lumbar root level and this opinion was within a reasonable degree of medical certainty. We fail to see how this testimony is not based upon a reasonable degree of medical certainty as claimed by Allstate. Allstate's basis for challenging the admission of this testimony is without merit.

The next question centers around a hypothetical question posed to Ragland. Specifically, Ragland was asked to assume Plaintiff was still experiencing occasional back pain which was made worse by activities such as bending and lifting, and that Plaintiff continued to wear a TENS unit. Given these assumptions, Ragland was asked whether he had an opinion "within a reasonable degree of medical certainty whether that back pain is permanent in nature". Allstate objected to the form of the question and because it assumed facts not in evidence. In response to the question, Ragland responded that Plaintiff's back pain was permanent although it could improve at some point in the future. Ragland then affirmed that this opinion was within a reasonable degree of medical certainty. Allstate's objection to this testimony is based on later testimony by Ragland that there was no *objective* evidence to confirm that the low back pain was caused by the accident. According to Allstate, this later testimony cancels out the previous testimony. We disagree. The later testimony simply confirms that there was no objective medical evidence that there was a lower back injury. This does not mean there was no injury, only that it was not detectable on the MRI that was performed on Plaintiff. In fact, Ragland testified that it was "definitely" possible to have a normal MRI but still have complaints of pain. According to Ragland, this was because MRI's do not show pain, they show structures. The hypothetical question posed to Ragland was in accord with the testimony of Plaintiff as to her medical condition and, therefore, did not assume facts not in evidence. To hold otherwise would prohibit testimony of a treating physician based on the medical complaints of the patient. Likewise, simply because there was no *objective* evidence on the MRI of an injury to the lower back, it does not automatically follow that there was no permanent injury. Ragland's testimony within a reasonable degree of medical certainty that Plaintiff had a permanent lower back injury coupled with Plaintiff's testimony was sufficient to establish a factual issue on whether Plaintiff suffered a permanent injury to the lower back. The fact that there was no objective medical evidence goes to the weight of the evidence and potential damages, both of which were matters for the jury to consider.

The next question objected to by Allstate was whether the automobile accident described by Plaintiff was the type of mechanism that could cause low back pain. Ragland responded that it "could". Allstate claims that this testimony was not based upon a reasonable degree of medical certainty. The testimony immediately after this question is, however, sufficiently definite:

> Q. Now, Doctor, assuming that Ms. Tipton, within several days of the car accident, began to develop some stiffness in her lower back and some pain that gradually increased up to the point in time that she saw you – that being July 15, 1996 – assuming that to be true, do you have an opinion within a reasonable degree of medical certainty whether the back pain that you diagnosed was causally-related to the car accident?

> MR. RICE: Object to the form.

> THE WITNESS: With the circumstances as stated in the question, yes, I would have a causal relationship there. Yes.

> Q. And that opinion is within a reasonable degree of medical certainty?

> A. Yes.

After considering the record as a whole, including the testimony of Plaintiff and Ragland, we conclude there was no error by the Trial Court in the admission of those portions of Ragland's testimony objected to by Allstate on appeal. It necessarily follows that the Trial Court's denial of Allstate's motion for directed verdict with regard to Plaintiff's claimed injury to the lower back was proper.

Acting as the thirteenth juror, a trial court is empowered to set aside a jury verdict and order a new trial. If a trial court determines that the amount of the verdict is excessive or inadequate, in lieu of granting a new trial it may suggest a remittitur or an additur. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999). This procedure avoids the expense and delay of conducting a new trial. *Id*.

> However, when a trial court approves a jury verdict, appellate courts may only review the record to determine whether it contains material evidence to support the jury's verdict. *See* Tenn. R. App. P. 13(d); *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Whitaker v. Harmon*, 879 S.W.2d 865, 867 (Tenn. Ct. App. 1994). Appellate courts do not reweigh the evidence and consider where the preponderance lies. Instead, they determine

whether there is any material evidence to support the verdict, and, if there is, they must affirm the judgment. *See Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d at 823; *Pullen v. Textron, Inc.*, 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992).

The jury bears primary responsibility for awarding damages in a personal injury action, followed closely by the trial court in its role as thirteenth juror. *See Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 328 (Tenn. 1996); *Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc.*, 919 S.W.2d at 41. When a trial court approves a verdict awarding damages in a personal injury action, our review is subject to the rule that if there is any material evidence to support the jury's award, it should not be disturbed. *See Hunter v. Burke*, 958 S.W.2d 751, 757 (Tenn. Ct. App. 1997).

*Overstreet*, 4 S.W.3d at 718. In light of the testimony of Plaintiff, Jackson, and Ragland, which we will not restate, including the amount of medical bills and lost wages incurred, we find there is material evidence to support the verdict of $20,000.00. We, therefore, affirm the Trial Court's denial of Allstate's motion for a remittitur and/or new trial.

Finally, Allstate alleges error when the Trial Court awarded discretionary costs to Plaintiff for Ragland's deposition and the court reporter fees for that deposition. Allstate essentially admits that the resolution of this issue depends in part on whether the Trial Court erred in admitting the challenged testimony of Ragland. A trial court's award of discretionary costs pursuant to Rule 54.04 of the Tenn. R. Civ. P. will be overturned only when there is an abuse of discretion. *Lock v. National Union Fire Insurance Company of Pittsburgh, Pa.,* 809 S.W.2d 483, 490 (Tenn. 1991). We find no abuse of discretion in awarding these costs.

## Conclusion

The judgment of the Trial Court is affirmed. This matter is remanded to the Trial Court for further proceedings as necessary, if any, consistent with this Opinion. Costs of this appeal are taxed to the Appellant, Allstate Insurance Company, and its surety.

_____
D. MICHAEL SWINEY, JUDGE