IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 1, 2002 Session

# RHANDIE PARKER, ET AL. v. WANDA McDANIEL, ET AL.

**Appeal from the Circuit Court for Grainger County**
**Nos. 6837 & 6838     O. Duane Slone, Judge**

## FILED DECEMBER 3, 2002

## No. E2001-03110-COA-R3-CV

Shannon Dale Welch ("Welch") and Stacy Ann Brooks ("Brooks") were the only two occupants in an automobile traveling at a high rate of speed when it collided with a vehicle driven by Rhandie Parker ("Parker"). Parker's brother-in-law, Hershel D. Williams ("Williams"), was a passenger in his vehicle. As a result of the accident, Parker claimed $27,100 in property damage, medical expenses of $8,241.52, and personal injuries. Williams claimed medical expenses totaling $9,545.38 and personal injuries. Parker's wife, Janice Parker ("Ms. Parker"), asserted a claim for loss of consortium. A jury returned a verdict against Welch in favor of Parker for $35,000, and awarded Ms. Parker nothing. Williams was awarded $29,000. All three Plaintiffs appeal with the primary issue being the adequacy of the verdict. We affirm.

### Tenn R. App. P. 3 Appeal as of Right; Judgment of the
### Circuit Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

R. Jackson Rose, Harrogate, Tennessee, for the Appellants Rhandie and Janice Parker, and Hershel D. Williams.

John T. Johnson, Knoxville, Tennessee, for the Appellee Wanda McDaniel, Administratrix of the Estate of Shannon Welch.

Gregory F. Coleman and Michael A. Myers, Knoxville, Tennessee, for the Appellee Curtis Mayford Brooks, Jr., Administrator of the Estate of Stacy Ann Brooks.

# OPINION

## Background

These consolidated lawsuits arise out of an automobile accident which occurred on September 7, 1997, in Grainger County, Tennessee. Plaintiffs allege a vehicle driven by either Welch or Brooks was traveling at a high rate of speed and collided with the vehicle driven by Parker and in which Williams was a passenger. Plaintiffs claim both Welch and Brooks were under the influence of alcohol at the time. Since Welch and Brooks died as a result of the automobile accident, Plaintiffs sued their estates. Parker sought compensation for personal injuries and damage to his vehicle, and his wife sought damages for loss of consortium. Williams sought damages for personal injuries.

Parker testified at some length. On the night of the accident, he had been to the English Mountain Dragway, something he did regularly until the accident. Parker owns a drag racing car and participates in 1/8 of a mile drag races. A 1/8 of a mile drag race takes approximately 6 seconds and Parker reaches a speed of up to 108 miles per hour. Parker testified he was pulling a trailer containing his drag racing car and traveling about 30 to 35 miles per hour. He was observing on-coming traffic and noticed a vehicle traveling at a high rate of speed attempt to pass another vehicle. This vehicle then hit Parker's vehicle head-on. He recalled seeing a "blond-headed girl" in the passenger seat prior to the impact. Parker testified the value of his vehicle prior to the accident was $28,200, and the vehicle sold for $1,100 after the accident.

Parker was treated for his injuries at the Morristown-Hamblen Hospital emergency room. He was released from the emergency room after approximately three hours and went to see Dr. Manning the next day. Dr. Manning eventually referred him to Dr. Hyde, who prescribed physical therapy, among other things. Parker was supposed to have physical therapy on 11 occasions, but due to inclement weather and his having the flu, he attended only two sessions. Fortunately, his daughter worked at the physical therapy center and was able to administer the physical therapy to Parker at home. Parker testified he was "bruised and beat pretty bad" from the accident. He had a fracture in his back and some fractured ribs. He still had pain at the time of the trial from the fractured ribs, and his back was a constant problem. Parker stated his injuries restrict a lot of his activities, although he continues to drag race. His medical bills incurred from the accident totaled $8,241.52.

Parker owned a farm with 28 cattle at the time of the accident. He sold the cattle to a neighbor because he was not able to take care of them after the accident. He occasionally operates a bulldozer which he uses for logging. He has to obtain the services of someone to help him operate the bulldozer because he has difficulties operating it since the accident. Parker and Ms. Parker own the Villa Motel in Claiborne County. Parker is unable to stock the convenience store located in the motel and no longer participates in its upkeep because of his injuries sustained in the accident.

Parker acknowledged on cross-examination that while it was dark outside and he only saw the oncoming car a "split second" before impact, he did see a blond headed female in the passenger seat. He was treated by Dr. Manning three times during the first month after the accident, and he told Dr. Manning he was improving. Parker admitting stating in a deposition that he had attended all of his therapy sessions and this testimony was not "totally accurate." The last time he was treated by Dr. Hyde was approximately three years prior to the trial. Parker stated he does not incur any pain while drag racing, even though the drag racing car goes from 0 to 108 miles per hour in six seconds. He drag raced in 1998, 1999, and 2000. He is able to unhook the trailer once he arrives at the race track. Parker claimed he did not tell his vocational rehabilitation expert, Julian Nadolsky ("Nadolsky"), that he had not been drag racing, and Nadolsky's report is wrong if it states Parker has not been drag racing. Parker testified he made income from logging, bulldozing and cattle prior to the accident. However, he admitted none of this alleged income was reported on his income tax returns. Parker acknowledged he was making a claims for loss of income from these enterprises, but he could not state the amount of income he claims to have lost.

Williams testified as well. He does not recall seeing anything prior to the accident. He remembers being in the emergency room but was not admitted to the hospital. Williams stated he had ruptured discs from the seat belt he was wearing. He also suffers from post traumatic stress syndrome related to the accident. Prior to the accident, he worked six or seven days a week for a cleaning business he and his first wife owned. Their net income in 1996 was $20,068, and $18,071.49 in 1997. He has not worked in the cleaning business or anywhere else since the accident. Williams testified he is unable to work and draws social security disability in the amount of $503 per month. He continues to accompany Parker to the drag races and assists him when necessary. He has a considerable amount of pain from the accident. Williams stated he is physically unable to perform any of the work he was qualified to perform before the accident. He occasionally goes walking with his wife and has gone fishing a couple of times. For the most part, the injuries from the accident prevent him from doing anything.

Williams acknowledged, on cross-examination, that he was treated and released from the emergency room and never was admitted to the hospital. He admitted having his neck and back adjusted by a chiropractor prior to the accident and having been prescribed Paxil prior to the accident because he was burned out and working too much. In his pre-trial deposition, however, he denied being treated for depression prior to the accident. He acknowledged knowing a year before the accident his wife intended on leaving him, but claims the stress he is under currently is related completely to the accident. He does not recall telling Nadolsky he was unable to assist Parker in drag racing after the accident. The business he and his now ex-wife operated was her business. Williams claimed the business was originally in his name, but his ex-wife secretly changed the business license prior to leaving him. He claims he was unaware she had changed the license and that the business was in her name, even though he signed several tax returns which stated the business was hers. The income from the business was reported as income to his then wife, not as income to Williams. Williams admitted reporting no income on his income tax returns for three or four years prior to the accident. He has not applied for a job since the accident. None of his physicians have told him not to work. He has not been treated by Dr. Hyde for two and one-half

years. Williams stated in his deposition that he never had any injuries before the accident, but later was shown medical records from his chiropractor where he complained of pain in his neck, back, and leg prior to the accident. Williams told Dr. McKnight, in February of 1999, that he was able to go hiking and he and his new wife were hanging wall paper and painting. According to Dr. McKnight's medical records, Williams described his life as happy and cheery, he was sleeping good, and every day felt like a spring day since he started taking Zoloft for depression and remarried. Williams' medical expenses resulting from the accident totaled $9,545.38.

Nadolsky testified on behalf of both Parker and Williams. As to Parker, Nadolsky testified he has an eighth grade education, although he reads at the High School level. Relying on Parker's education level, work experience, medical restrictions resulting from the accident, etc., Nadolsky opined Parker had a 55% vocational impairment as a result of the accident. According to Nadolsky, if Parker did return to the job market performing a job he still could undertake, he would earn between $12,000 and $18,000 per year. Nadolsky was "quite clear" Parker told him he no longer drag raced. Nadolsky also agreed if Parker had started the logging business after the accident, then that was inconsistent with what he had been told. In reaching his conclusion as to vocational disability, Nadolsky admitted it was very important for him to receive an accurate history on the person's physical capabilities, work history, etc. Nadolsky testified it was his understanding Parker was working 40 hours a week after the accident compared to 90 hours per week before the accident. With regard to Williams, Nadolsky testified he was 100% vocationally disabled as a result of the accident. Nadolsky testified Williams told him he was no longer able to assist Parker with drag racing.

Janice Parker is Parker's wife and Williams' sister. Ms. Parker testified to the increased responsibility she had in running the motel after her husband was injured in the accident. She also testified to having to care for her husband after the accident and the continuing effects it has had on the marriage since that time. Her husband still helps with the motel and store although he can not do as much as he did prior to the accident.

Dr. Hyde, an orthopedic surgeon, treated both Parker and Williams. With regard to Parker, an MRI was performed which revealed a ruptured disc at the L4-5 level and a bulging disc at the L5-S1 level. After Parker had reached maximum medical improvement, Dr. Hyde advised him to avoid lifting in excess of 35 to 40 pounds and to avoid repetitive bending, twisting and stooping activities. Dr. Hyde concluded Parker had a 10% permanent partial medical impairment to the body as a whole as a result of the accident. An MRI scan also was performed on Williams. The results of that scan revealed three disc protrusions, at the C3-4, C4-5, and C5-6 levels. When Williams reached maximum medical improvement, Dr. Hyde instructed him not to lift in excess of 30 pounds and to avoid repetitive motion activities. Dr. Hyde concluded Williams had sustained a 15% permanent partial medical impairment to the body as a whole resulting from the automobile accident.

Prior to the jury being charged, Plaintiffs' counsel requested a jury instruction on negligent entrustment. The Trial Court refused to so charge the jury. After deliberations, the jury determined Welch was 100% at fault for the accident. The jury assessed damages in favor of Parker

in the amount of $35,000 for property damage and personal injuries. Williams was awarded $29,000 for personal injuries. Ms. Parker was awarded nothing. In light of the jury's verdict as to who was responsible for the accident, the Trial Court dismissed the claims against Brooks' estate.

All three Plaintiffs filed a motion for a new trial challenging the adequacy of the jury's verdict. They also claimed the Trial Court erred in not charging the jury with regard to negligent entrustment and in dismissing the claim against Brooks' estate. The final argument made by Plaintiffs in this motion was that the Trial Court erred in giving Plaintiffs' counsel a total of 15 minutes to make closing argument, but giving counsel for each defendant 15 minutes for a total of 30 minutes. Although not contained in the record, it appears the Trial Court overruled the motion for a new trial, and Plaintiffs appeal on all of these issues.

## Discussion

Acting as the thirteenth juror, a trial court is empowered to set aside a jury verdict and order a new trial. If a trial court determines that the amount of the verdict is excessive or inadequate, it may suggest a remittitur or an additur in lieu of granting a new trial. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999). This procedure avoids the expense and delay of conducting a new trial. *Id.* Here, the Trial Court approved the jury verdict.

However, when a trial court approves a jury verdict, appellate courts may only review the record to determine whether it contains material evidence to support the jury's verdict. *See* Tenn. R. App. P. 13(d); *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Whitaker v. Harmon*, 879 S.W.2d 865, 867 (Tenn. Ct. App. 1994). Appellate courts do not reweigh the evidence and consider where the preponderance lies. Instead, they determine whether there is any material evidence to support the verdict, and, if there is, they must affirm the judgment. *See Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d at 823; *Pullen v. Textron, Inc.*, 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992).

The jury bears primary responsibility for awarding damages in a personal injury action, followed closely by the trial court in its role as thirteenth juror. *See Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 328 (Tenn. 1996); *Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc.*, 919 S.W.2d at 41. When a trial court approves a verdict awarding damages in a personal injury action, our review is subject to the rule that if there is any material evidence to support the jury's award, it should not be disturbed. *See Hunter v. Burke*, 958 S.W.2d 751, 757 (Tenn. Ct. App. 1997).

*Overstreet*, 4 S.W.3d at 718.

The first six issues raised by Plaintiffs on appeal all center around the adequacy of the verdict. Parker was awarded damages roughly equal to the damages to his vehicle, in his opinion, and his medical expenses. Ms. Parker was awarded nothing for her loss of consortium claim. Williams was awarded roughly three times the amount of his medical expenses. Based on our review of the testimony and the record as a whole, it is apparent the jury had problems with the credibility of the various Plaintiffs, in particular with what Parker and Williams told Nadolsky about their physical limitations, etc. There also were discrepancies in their testimony regarding the income they earned prior to the accident and the extent of their injuries. Both Parker and Williams appeared to be less than candid. There is little doubt that the credibility of Plaintiffs (or lack thereof) impacted the amount of damages awarded by the jury. After a thorough review of the record, we conclude there is material evidence to support the amount of damages awarded by the jury as to all three Plaintiffs, and we, therefore, affirm the judgment in this regard.

The seventh and eighth issues raised by Plaintiffs on appeal are as follows:

7. The jury should have been charged the special request of Tennessee Pattern Instruction 3 – Civil 12.50, Negligent Entrustment, as requested prior to the trial, in that the circumstantial evidence is unrebutted that Stacy Brooks authorized Shannon Dale Welch to operate her vehicle while he was under the influence of alcohol.

8. There should not have been a directed verdict in favor of the Defendant, Curtis Mayford Brooks, Adm. of the Estate of Stacy Brooks for the reason set out in Issue number 7.

With regard to the seventh and eighth issues, the jury charge requested by Plaintiffs is as follows:

Negligent Entrustment

An owner of a motor vehicle is legally responsible for the fault of another if:

(1) The owner gives permission to the person to use the vehicle; and

(2) The owner knows, or from the facts known to the owner should know, that the user is under the influence of intoxicants or drugs; and;

(3) The intoxication of the person permitted to use the vehicle is a legal cause of the injuries to the plaintiff . . .

While the facts are undisputed that Welch had a blood alcohol content of .16 after the accident and the car belonged to Brooks, there is no proof whatsoever in the record to show Brooks knew or should have known that Welch was intoxicated. There is no proof where or with whom Welch was drinking prior to the accident, if Brooks even was aware he had been drinking, whether there were any visible effects on Welch of the alcohol consumption, etc. Likewise, there was no expert proof describing the visible physical effects a blood alcohol content of .16 would have had on Welch or any other individual.

With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). We are unable to conclude simply because Welch had a blood alcohol content of .16, without more, that a jury question was presented as to whether Brooks negligently entrusted her vehicle to Welch. Accordingly, we affirm the Trial Court on this issue.

As stated, the eighth issue is a claim the Trial Court erred in dismissing Brooks' estate since Brooks negligently entrusted her vehicle to Welch. In light of our conclusion the Trial Court did not err in refusing to instruct the jury on negligent entrustment, this issue is moot.

The final issue on appeal concerns the amount of time Plaintiffs' counsel was allowed for closing argument. The length of time allotted for closing argument is a mater within the sound discretion of the trial court. *See Witherspoon v. Ciba-Geigy Corp.,* 1986 Tenn. App. LEXIS 2773 at *9 (Tenn. Ct. App. Feb. 12, 1986)("Further we do not believe the trial court abused its discretion by giving the plaintiffs and each of the defendants the same amount of time for closing arguments where, as in the instant case, a different cause of action was brought against each defendant."). Although the claims against the Defendants were essentially the same, particularly so since negligent entrustment properly was not charged, the position of the Defendants were not. For example, Brooks' estate claimed Brooks was the passenger, whereas Welch's estate claimed Welch was the passenger. We have not been provided a transcript of the closing arguments on appeal. Under the record presented to us, we cannot ascertain if allowing Plaintiffs a total of only 15 minutes for closing argument in any way impacted their cases. In light of the record before us, we are unable to conclude the Trial Court abused its discretion in allowing Plaintiff a total of 15 minutes for closing argument while at the same time allowing each Defendant 15 minutes.

**Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion. The costs on appeal are assessed equally against the Appellants Rhandie Parker and Hershel D. Williams, and their surety.

_____
D. MICHAEL SWINEY, JUDGE